UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

|  |  |
|---|---|
| HIGHLINE CAPITAL MANAGEMENT, LLC, | Civil Action No.: |
| Plaintiff, | **COMPLAINT** |
| - against - | **JURY TRIAL DEMANDED** |
| HIGHLINE WEALTH MANAGEMENT, LLC and NEIL J. SIMON, | |
| Defendants. | |

------------------------------------------------------------------- x

Plaintiff Highline Capital Management, LLC. ("Plaintiff" or "Highline"), by its attorneys,

Tannenbaum Helpern Syracuse & Hirschtritt LLP, for its Complaint herein alleges:

### Nature of the Action

1.      Highline is a well-established financial services company specializing in financial

services in the nature of investment fund management.  Since July 1995, Highline has used its

federally-registered trademark HIGHLINE® to identify the financial services it provides and,

through substantial effort, its HIGHLINE mark has developed substantial and valuable goodwill.

Highline manages more than $2.6 billion on behalf of hundreds of investors, including primarily

university endowments, public pension funds, foundations, and high net worth individuals.

Highline's principal financial services are provided through hedge funds that follow a long-short

equity strategy and invest primarily in public securities.

2.      Defendant Neil J. Simon, through a business entity that he controls, Defendant

Highline Wealth Management, LLC ("Highline Wealth Management"), also specializes in

financial services including investment advisory services related to investment fund

[1016258]

management.  Like Highline, Highline Wealth Management assists high net worth individuals,

institutions, and other investors in investing their assets, including in public securities and long-

short equity hedge funds.

      3.     Defendants prominently feature the element HIGHLINE in their company name,

as well as in their service mark, internet URL (highlinewealth.com), and, on their website.  In

addition, as shown below, Defendants regularly shorten their company name and refer to

themselves as "Highline."





4.      Similarly, news reports also regularly refer to the company by the shorthand name

"Highline."



5.      Highline first became aware of Highline Wealth Management in October 2007,

when *Investment News* magazine published an article about Defendants.  Highline reached out to

Defendants to express its concerns and was assured by Mr. Simon that Highline Wealth

Management was—and would remain—a small organization that operated in Maryland, that it did not serve the types of clients that Highline served, and that there would be no confusion in the market. In reliance on Defendants' representations and assurances that they were truly distinct from Highline and its services, and given that they were small and geographically remote and not a competitive threat to Highline at the time, Highline agreed to forebear from action.

      6.     In 2012, Highline was disappointed to learn that Defendants had expanded from Maryland into Pennsylvania. On October 29, 2012, Highline sent a letter to Defendants demanding that they cease their infringing use of the HIGHLINE trademark. During the course of months of negotiations, Defendants once again represented to Highline that confusion was not likely. They represented that they did not provide the kind of investment fund management services that Highline provides; instead, they were providing only "wealth management financial consulting." Again, in reliance on Defendants' representations and assurances that they were truly distinct from Highline and its services, and because Defendants remained geographical remote and not a competitive threat to Highline, Highline agreed to forebear from action. In its correspondence, though, Highline made clear that its statements were "without prejudice to any of Highline's rights, all of which are expressly reserved." Highline Wealth Management similarly indicated that it "likewise reserves all rights, legal and equitable."

      7.     Despite Defendants' representations, Defendants have progressively encroached into Highline's space. A 2015 article in *Investment News* magazine reported that Highline Wealth Management has 200 clients and more than $1.3 billion assets under management ("AUM") (see below); by comparison, Highline has about $2.6 billion assets under management, which means that Highline Wealth Management is now nearly half of Highline's size. Of even greater concern, Highline Wealth Management's website now reveals that it has offices in New

York City, where Highline was founded and always has been located (see below).  And,

exacerbating Highline's concern over the competitive threat posed by Defendants and the

likelihood of





Billion Dollar Babies
By Mason Braswell and Trevor Hunnicutt, March 16, 2015

**A business, not just a practice**

Highline Wealth Management
Bethesda, Md

| | |
|---|---|
| AUM | $1.3B |
| Clients | 200 |
| Employees | 26 |
| Advisers | 6 |
| Year firm founded | 2002 |
| Year firm became a billion dollar baby | 2010 |

READ FULL STORY



confusion, Highline Wealth Management's website now reveals that, contrary to Defendants'

prior representations, Defendants do, in fact, offer investment fund management services that are

highly similar to the investment strategy and services offered by Highline.  As Highline Wealth

Management explains on its website, it follows an investment strategy modeled after the investment approach pursued by endowments – who are among the core clients serviced by Highline – which includes investing in asset classes such as long-short equity funds (of which Highline is an example) and other alternative investment strategies (see below).



-from-the-top    🔍 ▾ C    🌐 Highline Wealth Managem... ✕

**What is your approach and philosophy when providing advice on investing, asset allocation and portfolio structuring?**

Highline has modeled our investment philosophy after the country's largest and most successful endowments. We believe, similar to the endowment approach, that the portfolio allocation produces 85% - 90% of portfolio returns.  In addition to traditional stock and bond investing, this approach incorporates the use of diverse asset classes such as long-short equity, long-short credit, futures and commodity strategies, Real Estate Investment Trusts (REITs), Master Limited Partnerships (MLPs) and managers with a less constrained, multi-strategy mandate.  This additional diversification increases portfolio efficiency, or the potential return at any given level of risk, allowing for better capital preservation over the longer-term while focusing on principal protection.

Using an open architecture platform, we use a combination of active and passive (indexing) investment styles in our client portfolios.  Our belief is that it is best to access the most efficient asset classes through inexpensive index-based investments, and then, for the other asset classes, use active managers with track records of outperforming their respective benchmark.

     8.     Defendants' use of the HIGHLINE trademark for goods and services that have progressively encroached onto Highline's services, and have geographically encroached into the city where Highline is headquartered, is likely to cause confusion between Defendants and their services, and Highline.  Investors and potential investors will likely be confused into believing that Highline Wealth Management's and Mr. Simon's services come from, or are affiliated with or sponsored by, Highline.

9.    Accordingly, to protect the goodwill associated with its trademark from infringement and dilution, and to protect its trademark rights, Highline has commenced this action for (a) infringement of federally registered trademarks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114, (b) counterfeiting in violation of § 32 and § 35 of the Lanham Act, 15 U.S.C. §§ 1114, 1117,  (c) trademark infringement and false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (d) use of deceptive acts or practices in the conduct of business, trade or commerce or the furnishing of services in violation of New York General Business Law § 349, (e) trademark infringement and unfair competition in violation of common law, and (f) trademark dilution and injury to business reputation in violation of New York General Business Law § 360-*l*.

### The Parties

10.    Plaintiff Highline is a Delaware limited liability company having its principal place of business at One Rockefeller Plaza, 30th Floor, New York, New York 10020.

11.    Upon information and belief, Defendant Highline Wealth Management, LLC  is a Maryland limited liability company, with offices at 1140 Avenue of the Americas, 9th Floor, New York, New York 10036, as well as in Rockville, Maryland and Plymouth Meeting, Pennsylvania.

12.    Upon information and belief, Defendant Neil J. Simon ("Simon") is a citizen of the State of Maryland and the Founder and CEO of Highline Wealth Management, with a place of business at 1140 Avenue of the Americas, 9th Floor, New York, New York 10036.

### Jurisdiction

13.    This action arises, *inter alia,* under the Trademark Act of July 5, 1946, as amended, 15 U.S.C. §§ 1051 *et seq.*, known as the Lanham Act.

[1016258]

14.     This Court has jurisdiction of this action pursuant to § 39(a) of the Lanham Act, 15 U.S.C. § 1121(a); 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367(a).

## FIRST CLAIM FOR RELIEF

### Infringement of Registered Trademark

15.     Highline repeats and realleges the foregoing Paragraphs as if fully set forth herein

### Plaintiff's Business and Marks

16.     Highline engages in the business of investment management through, *inter alia*, offering qualified investors opportunities to invest in private investment funds.

17.     Highline's customers include U.S. and non-U.S. individuals and institutional investors.  Highline has customers throughout the United States, including in the Southern District of New York, and in a number of other countries.

18.     Highline is the owner of all right, title and interest, in the federally-registered trademark HIGHLINE for financial services in the nature of investment fund management, which it uses in connection with its investment management business.  The trademark HIGHLINE is registered with the United States Patent & Trademark Office under Registration No. 2,502,179. A copy of the certificate of registration is annexed as Exhibit A.

19.     Highline has used the mark HIGHLINE in interstate commerce since at least July 31, 1995, in connection with both its investment fund management services and its management and operation of the investment funds it operates, Highline Capital Partners, L.P., Highline Capital Partners QP LP, Highline Capital International, Ltd., Highline Select, L.P., Highline Enhanced, Ltd. and Highline Capital Qualified Fund, Ltd., and has used the trade name and company name "Highline Capital Management" since at least July 31, 1995.  Highline has also

used its HIGHLINE mark as the dominant element of the name of its affiliated company Highline Capital Holdings, L.L.C.

20.     By virtue of having been in continuous use for more than five consecutive years subsequent to the dates of registration and Highline's compliance with the provisions of § 15 of the Lanham Act, the HIGHLINE mark has become incontestable within the meaning of said section, and Highline has the exclusive right to use said mark throughout the United States.

21.     Highline has also used its HIGHLINE mark as part of the Internet domain name "highlinecap.com," which it also owns, identifying its Internet web site located at www.highlinecap.com.

22.     As a result of substantial time and effort, and long and substantial use of the HIGHLINE Marks, Highline has developed substantial recognition for its services and the investment funds it manages under the HIGHLINE Marks, which have acquired and now enjoy a valuable reputation and goodwill associated with said mark.

**Defendants' Activities**

23.     Upon information and belief, Defendant Simon is the founder and CEO of Defendant Highline Wealth Management.

24.     Upon information and belief, Highline Wealth Management offers investment management and financial advisory services.  Upon information and belief, Highline Wealth Management provides such services to high net-worth individuals, as does Highline.

25.     Defendant Simon registered the Internet domain name "highlinewealth.com," which he owns and uses in commerce in connection with Highline Wealth Management's business.

26.    Highline Wealth Management currently offers investment management and financial advisory services to consumers and operates an Internet website promoting its business located at www.highlinewealth.com (the "Highline Wealth Website"). In connection with their business Defendants are featuring the HIGHLINE element prominently in the service mark HIGHLINE WEALTH MANAGEMENT and the Highline Wealth Website. Its logo appears on the highlinewealth.com website as shown below:

# HIGHLINE
WEALTH MANAGEMENT

27.    Upon information and belief, Defendants commenced offering their services and the Highline Website became operational several years ago. However, Defendants' have only recently expanded their activities to New York City, the same city in which Highline operates, and have progressively encroached on Highline's business in terms of the amount of assets under management.

28.    Highline has only recently learned that Highline Wealth Management has opened a New York office, located at 1140 Avenue of the Americas. Highline has also learned that, on June 5, 2015, Highline Wealth Management qualified to do business in New York through a filing with the New York Secretary of State. Previously, Highline Wealth Management only maintained offices in Rockville, Maryland and Plymouth Meeting, Pennsylvania and appeared to have little or no presence in the New York area.

29.    Defendants' use of the HIGHLINE element in their trademark, trade name and Internet domain name is not licensed by, and is without the consent of, Highline.

30.    Upon information and belief, Defendants' wealth management and investment advisory services offered or promoted under the auspices of the Highline Wealth Management

service mark are now offered and will continue to be offered through the same channels of trade, and to the same classes of investors, as the investment management services offered by Highline under the registered HIGHLINE Marks.

**Likelihood of Confusion; Injury to Plaintiff**

31.    Defendants' use of the HIGHLINE element in its trademark, trade name and the Highline Wealth Website, for investment management and financial advisory services, which are confusingly similar to Highline's HIGHLINE Marks and <highlinecap.com> Internet domain name, falsely indicates to consumers, to the trade and to businesses that serve the trade, such as prime brokers, research firms and other broker-dealers, that Highline Wealth Management and/or its and Mr. Simon's services are provided by Highline in some manner connected with, sponsored by, affiliated with, or related to Highline and its services and products.

32.    Defendants' use of the HIGHLINE element in its trademark, trade name and the Highline Wealth Website, in connection with Highline Wealth Management's investment management and financial advisory services allows, and will continue to allow, Defendants to receive the benefit of goodwill built up at great labor and expense by Highline and to gain interest, acceptance and recognition, including, but not limited to, initial interest, acceptance and recognition, for Defendants' services not based on the merits of those services and products, but on the reputation and goodwill of Highline's services and products.

33.    The above-mentioned activities of Defendants are likely to cause confusion, or to cause mistake, or to deceive consumers, the trade, and businesses that serve the trade concerning the origin of Defendants' services and products.  Such persons are likely to believe that Defendants' services and products come from Highline or are sponsored by, approved by, or associated with Highline.

[1016258]

11

34.   Defendants' activities also cause Highline to lose control over its reputation and put Highline's reputation and considerable goodwill at risk.

35.   The acts of Defendants complained of above have been conducted in commerce and have affected, and will continue to affect, Highline's business of offering investment management services and investment products in commerce.

36.   Defendants' activities described above constitute infringement of a registered trademark and false designation of origin in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

37.   Defendants are well aware of Highline's trademark rights and their deliberate decision to infringe those rights makes the infringement herein willful.

38.   Upon information and belief, the nature of the acts of Defendants complained of above, and the state of Defendants' knowledge of Highline's rights, make this an exceptional case under § 35 of the Lanham Act, 15 U.S.C. § 1117(a).

39.   By reason of the foregoing, Highline has suffered, and unless enjoined by this Court will continue to suffer, irreparable and immediate injury for which Highline has no adequate remedy at law.

40.   By reason of the foregoing, Highline has been injured in its business and is entitled to permanent injunctive relief and to recover damages in an amount to be proved at trial, enhanced in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF

### Trademark Counterfeiting

41.   Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

42.   Plaintiff's trademark HIGHLINE is registered with the United States Patent & Trademark Office under Registration No. 2,502,179.

43.   Defendants' use of the HIGHLINE element in their trademark, trade name and Highline Wealth Website is identical with, or substantially indistinguishable from, Plaintiff's registered HIGHLINE mark.  Defendants are offering investment fund management services under their HIGHLINE mark.

44.   Defendants' use of the HIGHLINE element in their trademark, trade name and Highline Wealth Website, in connection with the offering of financial services in the nature of investment fund management, is spurious and likely to cause confusion, mistake or deceive the public into believing that Highline Wealth Management is Highline, or that the Defendants' services offered through Highline Wealth Management are actually offered by Highline.

45.   Defendants have been using the HIGHLINE element in their trademark, trade name and Highline Wealth Website knowing they are counterfeits of Plaintiff's registered trademark and without Plaintiff's consent.

46.   Defendants have been using the HIGHLINE element in their trademark, trade name and Highline Wealth Website willfully and maliciously.

47.   The acts of Defendants complained of above constitute counterfeiting in violation of § 32 and § 35 of the Lanham Act, 15 U.S.C. §§ 1114, 1117.

### THIRD CLAIM FOR RELIEF

### False Designation of Origin

48.   Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

49.   The acts of Defendants complained of above constitute false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

[1016258]

50.   By reason of the foregoing, Highline has suffered, and unless enjoined by this Court will continue to suffer, irreparable and immediate injury for which Highline has no adequate remedy at law.

51.   By reason of the foregoing, Highline has been injured in its business and is entitled to permanent injunctive relief and to recover damages in an amount to be proved at trial.

### FOURTH CLAIM FOR RELIEF

### Use of Deceptive Acts or Practices

52.   Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

53.   The acts of Defendants complained of above constitute use of deceptive acts or practices in the conduct of business, trade or commerce or the furnishing of services in violation of New York General Business Law § 349.

54.   By reason of the foregoing, Highline has suffered, and unless enjoined by this Court will continue to suffer, irreparable and immediate injury for which Highline has no adequate remedy at law.

55.   By reason of the foregoing, Highline has been injured in its business and is entitled to permanent injunctive relief and to recover damages in an amount to be proved at trial.

### FIFTH CLAIM FOR RELIEF

### Common Law Trademark Infringement and Unfair Competition

56.   Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

57.   The acts of Defendants complained of above have and will continue to unjustly enrich Defendants at Highline's expense by confusing potential investors, consultants and service providers concerning a relationship, including, but not limited to, sponsorship, approval, ownership or affiliation between Highline and Defendants.

[1016258]

58.   The acts of Defendants complained of above constitute trademark infringement and unfair competition under the common law of the State of New York.

59.   By reason of the foregoing, Highline has suffered, and unless enjoined by this Court will continue to suffer, irreparable and immediate injury for which Highline has no adequate remedy at law.

60.   By reason of the foregoing, Highline has been injured in its business and is entitled to permanent injunctive relief and to recover damages in an amount to be proved at trial.

## SIXTH CLAIM FOR RELIEF

### State Law Trademark Dilution and Injury to Business Reputation

61.   Plaintiff repeats and realleges the foregoing Paragraphs as if fully set forth herein.

62.   Highline's HIGHLINE Marks are distinctive or have acquired distinctiveness.

63.   Defendants' use of their HIGHLINE mark and trade name as alleged above is likely to cause dilution by blurring and/or tarnishment of the HIGHLINE Marks.

64.   Defendants' use of their HIGHLINE mark and trade name as alleged above will cause Highline to lose control of the reputation of its name and mark in that consumers, the trade, and businesses that serve the trade are likely to associate with Highline the performance of Defendants' services, any legal or regulatory difficulties encountered by Defendants, or any other detrimental events or events likely to generate negative publicity that may befall Defendants. Such events, which are outside Highline's control, are likely to injure Highline's business reputation.

65.   The acts of Defendants complained of constitute trademark dilution and damage to business reputation in violation of New York General Business Law § 260-*l*.

66.   By reason of the foregoing, Highline is likely to suffer, has suffered, and unless enjoined by this Court will continue to suffer, irreparable injury in the form of dilution of its trademark and loss of control of its business reputation, for which Highline has no adequate remedy at law.

67.   By reason of the foregoing, Highline has been injured in its business and is entitled to injunctive relief and to recover damages in an amount to be proved at trial.

### Prayer for Relief

WHEREFORE, Plaintiff demands judgment:

(a)   Enjoining Defendants, Defendants' officers, agents, employees, attorneys, subsidiaries, assigns or related companies, and those in active concert or participation with Defendants, or any of them, who receive actual notice of the judgment by personal service or otherwise, from using or employing, directly or indirectly, the service mark or trademark HIGHLINE, the service mark, trademark or trade name Highline Wealth Management, the Internet domain name "highlinewealth.com", or any other mark, trade name or domain name confusingly similar to HIGHLINE, or that contains the element HIGHLINE in any variant form, in connection with the offering or sale of financial services including but not limited to investment fund management and investment advisory services;

(b)   Directing Defendants to file with this Court, within thirty (30) days after entry of any injunction in this case, a written statement, under oath, setting forth in detail the manner in which Defendants have complied with the injunction;

(c)   Directing Defendants to account to Plaintiff for the profits of its infringement;

[1016258]

(d)      Awarding Plaintiff its damages, in an amount to be proved at trial, resulting from the acts alleged herein, enhanced in accordance with § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), or other applicable law;

(e)      Awarding Plaintiff treble damages and prejudgment interest resulting from the use of a counterfeit mark, in accordance with § 35(b) of the Lanham Act, 15 U.S.C. § 1117(b), or other applicable law; and

(f)      Upon Plaintiff's election awarding Plaintiff statutory damages resulting from the use of a counterfeit mark, in accordance with § 35(c) of the Lanham Act, 15 U.S.C. § 1117(c), or other applicable law; and

(g)      Awarding Plaintiff reasonable attorneys' fees in accordance with §§ 35(a) and 35(b) of the Lanham Act, 15 U.S.C. § 1117(a), (b); and

(h)      Awarding Plaintiff such other and further relief as this Court deems just and proper and the costs and disbursements of this action.

Dated: New York, New York
       July 2, 2015

                               TANNENBAUM HELPERN
                               SYRACUSE & HIRSCHTRITT, LLP


                          By: _____
                                 L. Donald Prutzman
                               900 Third Avenue
                               New York, New York 10022
                               (212) 508-6700
                                 Attorneys for Plaintiff

[1016258]                        17

# EXHIBIT A

Int. Cl.: 36

Prior U.S. Cls.: 100, 101 and 102

Reg. No. 2,502,179

**United States Patent and Trademark Office**   Registered Oct. 30, 2001

**SERVICE MARK**
**PRINCIPAL REGISTER**

**HIGHLINE**

HIGHLINE CAPITAL MANAGEMENT, LLC (DE-
LAWARE LIMITED LIABILITY COMPANY)
1270 AVENUE OF THE AMERICAS
ROCKEFELLER CENTER
NEW YORK, NY 10020

FIRST USE 7-31-1995; IN COMMERCE 7-31-1995.

SER. NO. 78-035,852, FILED 11-17-2000.

FOR: FINANCIAL SERVICES IN THE NATURE
OF INVESTMENT FUND MANAGEMENT, IN
CLASS 36 (U.S. CLS. 100, 101 AND 102).

CHRISTOPHER LEADEN, EXAMINING ATTOR-
NEY

1000803749v6